Ronald P. Oines (State Bar No. 145016)
roines@rutan.com
Sarah Van Buiten (State Bar No. 324665)
svanbuiten@rutan.com
RUTAN & TUCKER, LLP
18575 Jamboree Road, 9th Floor
Irvine, CA  92612
Telephone:  714-641-5100
Facsimile:  714-546-9035

Attorneys for Plaintiff
LOANDEPOT.COM, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOANDEPOT.COM, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>MELIO LTD., Israel corporation; MELIO PAYMENTS, INC., a Delaware corporation, and DOES 1-10,<br><br>Defendants. | Case No. 8:24-cv-01426-DOC-AS<br><br>**PLAINTIFF LOANDEPOT.COM, LLC'S OPPOSITION TO DEFENDANTS MELIO LTD. AND MELIO PAYMENTS INC.'S MOTION TO COMPEL ARBITRATION AND STAY ACTION; DECLARATION OF RONALD P. OINES IN SUPPORT THEREOF**<br><br>Date:          September 30, 2024<br>Time:          8:30 a.m.<br>Courtroom:  10A<br>Judge:         Hon. David O. Carter<br><br>Date Action Filed:  June 27, 2024<br>Trial Date:          Not Set |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ..................................................................................1

II.  RELEVANT FACTS .............................................................................2

III. ARGUMENT .........................................................................................5

    A.   The Settlement Agreement Does Not Implicate The Convention, Such That The Motion To Compel Arbitration In New York Must Be Denied For Lack Of Jurisdiction ..................................................................................5

        1.   An International Treaty Addressing Arbitration Of Foreign Commercial Disputes Does Not Govern Here.....................................................................................5

        2.   Because the Convention Does Not Apply, This Court Cannot Compel Arbitration in New York ......................9

    B.   Assuming Jurisdiction Exists To Consider Arbitrability, The Carveout In The Settlement Agreement Exempts The Lawsuit From Its Province, Such That No Issue Should Be Arbitrated ............................................................................10

        1.   The Court Cannot Compel The Parties To Arbitrate A Dispute That Has Been Specifically Excluded From The Province Of The Settlement Agreement.................11

            a.   Even If The Court Reaches The Four-Pronged *Balen* Test, Which It Need Not Do, There Is No Basis To Compel Arbitration Under The Convention .....................................................11

            b.   The Motion Largely Ignores The Carveout In Section 3.3, Which Excludes This Lawsuit From Any Obligation To Arbitrate, And Cites No Law Considering Such Carveouts ...........................15

        2.   The Parties Did Not Clearly And Unmistakably Delegate Arbitrability To An Arbitrator Because They Exempted Disputes Over Actual Use From The Overall Agreement ............................................17

    C.   Defendants Fail To Carry Their Heavy Burden To Establish Their Entitlement To A Stay Of This Lawsuit...................21

IV.  CONCLUSION ...................................................................................21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Alvarado v. Rockwell Collins, Inc.*,
  Case No. CV 23-400-JFW(JCx), 2023 WL 5505877
  (C.D. Cal. May 24, 2023) ................................................................. 14, 15

*Archer and White Sales, Inc. v. Henry Schein, Inc.*,
  935 F.3d 274 (5th Cir. 2019) .................................................................. 19

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986) ................................................................................ 18

*Balen v. Holland Am. Line Inc.*,
  583 F.3d 647 (9th Cir. 2009) ............................... 5, 6, 10, 11, 12, 14, 17

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015) .......................................................... 18, 19

*Cain v. Jpay, Inc.*,
  No. 2:21-cv-07401-FLA-(AGRx), 2022 WL 1840342
  (C.D. Cal. Apr. 4, 2022) ......................................................................... 21

*Chen v. Bank of Am., N.A.*,
  CV 19-6941-MWF-(SK), 2020 WL 4561658 (C.D. Cal. Mar. 31, 2020) ......... 21

*Chloe Z Fishing Co. v. Odyssey Re (London) Ltd.*,
  109 F. Supp. 2d 1236 (S.D. Cal. 2000) ................................... 5, 6, 11, 12

*DDK Hotels, LLC v. Williams-Sonoma, Inc.*,
  6 F.4th 308 (2d. Cir. 2021) ............................................................... 19, 20

*Doe v. Heidrick & Struggles, Inc.*,
  No. 2:24-cv-01113-SPG-PVC, 2024 WL 3051065
  (C.D. Cal. May 31, 2024) .................................................................. 14, 15

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995) .......................................................................... 18, 20

*GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*,
  590 U.S. 432 (2020) .................................................................................. 5

**Page(s)**

**FEDERAL CASES (CON'T.)**

*Goceri v. Amazon.com, Inc.*,
--- F.Supp.3d ----, 2024 WL 1007868 (N.D. Cal. 2024 .....................................20

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
561 U.S. 287 (2010) .........................................................................................14

*Han v. Synergy Homecare Franchising, LLC*,
No. 16-CV-03759-KAW, 2017 WL 446881 (C.D. Cal. Feb. 2, 2017).............19

*In re TFT–LCD (Flat Panel) Antitrust Litig.*,
No. 07–1827, 2013 WL 3784938 (N.D. Cal. July 18, 2013) ...........................12

*Int'l Union of Operating Eng'r, Local 17, AFL-CIO v. Union Concrete & Constr. Corp.*,
147 F.Supp.3d 202 (W.D.N.Y. 2015) ...............................................................10

*Katz v. Feinberg*,
167 F.Supp.2d 556 (S.D.N.Y. 2001), aff'd 290 F.3d 95 (2d Cir. 2002)...........10

*Ministry of Def. of Islamic Republic of Iran v. Gould Inc.*,
887 F.2d 1357 (9th Cir. 1989) .............................................................................6

*Mohamed v. Uber Techs., Inc.*,
848 F.3d 1201 (9th Cir. 2016) ...........................................................................19

*Morgan v. Sundance*,
596 U.S. 411 (2022) ..........................................................................................14

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*,
770 F.3d 1010 (2d Cir. 2014) ............................................................................20

*Nessim v. Fliff, Inc.*,
No. 5:23-cv-01048-SSS-SHKx, 2024 WL 1600649
(C.D. Cal. Jan. 5, 2024) .....................................................................................18

*Padilla Ayala v. Teledyne Defense Elec.*,
533 F.Supp.3d 920 (C.D. Cal. 2021)..........................................................6, 7, 8

*Pineda v. Sun Valley Packing, L.P.*,
No. 1:21-cv-01265-DAD-EPG, 2021 WL 5755586
(E.D. Cal. Dec. 3, 2021) ......................................................................................8

**Page(s)**

**FEDERAL CASES (CON'T.)**

*SanDisk Corp. v. SK Hynix Inc.*,
    84 F.Supp.3d 1021 (N.D. Cal. Mar. 26, 2015) ................................. 12, 13, 14, 15

*Staley v. Hotel 57 Services, LLC*,
    23-770 (L), 23-771 (CON), 2024 WL 1090816 (2d Cir. Mar. 13, 2024) .......... 20

*Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*,
    559 U.S. 662 (2010) ................................................................. 14

*Textile Unlimited, Inc. v. A. BMH & Co.*,
    240 F.3d 781 (9th Cir. 2001) ...................................................... 9

*Vedachalam v. Tata Am. Intern. Corp.*,
    477 F.Supp.2d 1080 (N.D. Cal. 2007), aff'd 339 F. App'x 761
    (9th Cir. 2009) ................................................................... 12

*Woodcrest Nursing Home v. Local 144, Hotel Allied Serv. Union*,
    788 F.2d 894 (2d Cir. 1986) ...................................................... 10

**REGULATORY CASES**

*In re Bay State Brewing Co., Inc.*,
    117 U.S.P.Q.2d 1958 (T.T.A.B. 2016) ........................................... 16

**FEDERAL STATUTES**

9 U.S.C.
    section 4 ........................................................................ 2, 9
    section 201, *et seq.* ................................................................ 2
    section 206 ...................................................................... 2, 9

15 U.S.C.
    section 1051(b) .................................................................... 7

**TREATISES**

Black's Law Dictionary (12th ed. 2024), such that Defendants .............................. 17

Convention, Art. II(1), 21 U.S.T. 2517, T.I.A.S. No. 6997 .................................... 11

1   **I.**    <u>**INTRODUCTION**</u>

2        Plaintiff loanDepot.com, LLC ("loanDepot") hereby opposes the Motion to

3   Compel Arbitration (Dkt. 14; the "Motion") filed by Defendants Melio Ltd.

4   (formerly Payper Smart Payments Ltd.; "Melio") and Melio Payments Inc. ("Melio

5   Payments"; with Melio, "Defendants") on the grounds that loanDepot never

6   consented to arbitrate any claims arising out of Defendants' actual use of the

7   MELIO Mark, from which all claims alleged in this lawsuit arise.

8        Five years ago, loanDepot and Melio entered a limited settlement agreement

9   to resolve a dispute regarding the description of services included in an intent-to-use

10   trademark application to register the MELIO Mark.  Despite its prior rights in the

11   MELLO Mark, loanDepot allowed the application to proceed to registration on the

12   condition that Melio limit the description of services set forth therein.  (*See*

13   Declaration of Ronald Oines ["Oines Decl."], ¶ 5, Ex. 4 [the "Settlement

14   Agreement"].)  loanDepot entered this limited Settlement Agreement on the express

15   condition that it not impact loanDepot's right to bring claims arising from any actual

16   use of the MELIO Mark, insisting on inclusion of the following carveout provision:

17        This Agreement is intended to address ***only*** the application for the

18        MELIO Mark and the services identified in the application. ***This***

19        ***Agreement does not address any concerns, actual claims, or potential***

20        ***claims of loanDepot related to Payper's actual use of the MELIO***

21        ***Mark now or in the future***, all of which are expressly reserved and

22        none of which are waived.

23   (*Id*., § 3.3 [emphasis added].)  Despite the plain language of this bargained-for

24   carveout, Defendants now insist that loanDepot's claims in this lawsuit – all of

25   which solely implicate actual trademark use and related advertising – are governed

26   by the Settlement Agreement and, thus, subject to the arbitration provision set forth

27   therein.  As discussed below, this position is contrary to black letter law.

28        In implicit acknowledgment of the weakness of their position, Defendants do

not move to compel arbitration under the default provisions of the Federal Arbitration Act (the "FAA"), despite initially acknowledging that these provisions apply.  (*See id.*, ¶ 15, Ex. 13.)  Now, in an attempt to forge an easier path to arbitration, Defendants insist on the application of an international treaty known as the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), 9 U.S.C. § 201, *et seq.*, which applies to arbitration agreements involving foreign commerce.  (Dkt. 14-1 at 9-10.)  Glaringly, Defendants do not address the threshold test to ascertain whether the Convention applies to the Settlement Agreement, but instead apply the secondary test used to determine whether to compel arbitration under an agreement already deemed within the ambit of the Convention.  (*See* Section III(A)(1), *infra*.)  This mistake is critical.  The law does not contemplate the application of this international treaty to a Settlement Agreement addressing the services listed in an intent-to-use trademark application.

Upon finding that the Convention does not apply, the Court must deny the Motion because the Settlement Agreement contemplates arbitration in New York and Defendants move to compel arbitration in that forum.  (*See* Dkt. 14.)  Under the default provision of the FAA, the Court can only compel arbitration within its own District (9 U.S.C. § 4), a point Defendants had conceded before bringing their Motion.  (Oines Decl., ¶ 15, Ex. 13 at p. 3.)  Arguably, the Convention expands this jurisdictional limitation for international arbitration agreements (9 U.S.C. § 206), yet this Court cannot grant the relief sought by Defendants without application of the Convention.  Nonetheless, even assuming jurisdiction exists here, it remains apparent that Defendants cannot compel the arbitration of a dispute that has been excluded from the province of the Settlement Agreement through a bargained-for carveout, such that the Motion must be denied.

## II.   **RELEVANT FACTS**

Since 2017, loanDepot has been using its MELLO Mark in commerce in connection with lending and related real estate services.  (Dkt. 1, ¶¶ 15, 17.)  On

August 5, 2018, Melio filed an intent-to-use application, seeking to register the MELIO Mark in connection with a wide range of financial services in International Classes 9, 35, 36, and 42.  (Oines Decl., ¶ 2, Ex. 1.)  On March 26, 2019, the application published for opposition, still on an intent-to-use basis.  (*Id*., ¶ 3, Ex. 2.)  At that point, loanDepot learned of Melio's application and became concerned by Melio's intent to use a mark similar to loanDepot's preexisting MELLO Mark in connection with similar services.  Melio and loanDepot began to discuss informal resolution, and loanDepot filed a Notice of Opposition to registration of the application on September 23, 2019.  (*Id*., ¶ 4, Ex. 3.)

Shortly thereafter, on September 26, 2019, the Parties entered into a limited Settlement Agreement, which required that Melio amend the description of services in its application to disclaim any services intended to fund real estate transactions.  (*Id*., ¶ 5, Ex. 4, § 2.1.)  In exchange for the amendment, as well as Melio's agreement to refrain from challenging loanDepot's MELLO Marks, loanDepot allowed the application to proceed to registration.  (*Id*., §§ 1.1, 2.2.)  Importantly, for sake of resolving the limited dispute over the application, the Parties expressly agreed to confine the scope of the Settlement Agreement to the dispute at-hand, omitting disputes over actual trademark use from the ambit of the Agreement.  (*Id*. § 3.3.)  For disputes relating to the subject matter of the Settlement Agreement, the Parties agreed to arbitrate in New York.  (*Id*., § 4.7.)  On October 27, 2020, the MELIO Mark registered, per the terms of the Agreement.  (*Id*., ¶¶ 6, 7, Exs. 5, 6.)

On April 16 and 18, 2023, Defendants filed two new trademark applications for stylized versions of the MELIO Mark, one in purple and the other in black.  (*Id*., ¶ 8, Ex. 7.)  loanDepot became concerned because the stylization featured in the new applications was notably similar to the stylization that loanDepot uses in connection with its MELLO Mark.  (*See id*.)  Specifically, as shown in the new applications, Defendants began using a stylized version of the MELIO Mark in a rounded, lowercase font and purple coloring, with the same stylized "M" that is

covered by loanDepot's registrations for its Stylized M Marks.  (*See id*., *see also* Complaint, ¶ 29.)  Upon further investigation, loanDepot learned that Defendants began using the stylized MELIO Mark to advertise financial services within the real estate industry, *i.e.*, targeting the same consumer base to which loanDepot advertises the services provided under its MELLO Marks.  (Complaint, ¶ 31.)

On March 27, 2024, loanDepot notified Defendants of its concerns.  (Oines Decl., ¶ 9, Ex. 8.)  On April 12, 2024, Defendants responded by challenging loanDepot's position (*see id.*, ¶ 10, Ex. 9), and on May 13, 2024, loanDepot reiterated its concerns, while expressing its understanding that the Settlement Agreement only implicated disputes over the description of services included in a trademark application.  (*Id.*, ¶ 11, Ex. 10 ["[T]he Parties' earlier Agreement solely addressed Melio's registration of its word mark in connection with the specific services listed in the application with U.S. Serial No. 88/065,714 (now U.S. Reg. No. 6,182,503)."].)  On June 20, 2024, Defendants responded by stating that they had abandoned the new trademark applications, without contesting loanDepot's understanding of the Settlement Agreement.  (*Id.*, ¶ 13, Ex. 12.)  Still concerned with Defendants' actual use of the MELIO Mark, loanDepot filed its Complaint on June 27, 2024.  (Dkt. 1.)

On August 6, 2024, Defendants sent a meet-and-confer letter conveying their intent to file a motion to stay this lawsuit pending adjudication of an impending petition to compel arbitration in New York.  (Oines Decl., ¶ 15, Ex. 13.)  On August 8, 2024, loanDepot responded by citing Second Circuit authority that foreclosed Defendants' position regarding the arbitrability of this dispute.  (*Id.*, ¶ 16, Ex. 14.) Thereafter, Defendants apparently declined to file their petition to compel arbitration in New York, as planned, but moved this Court for an order compelling arbitration in New York, relying on the jurisdictional reach of an international treaty.  (Dkt. 14.)  Defendants' Motion should be denied.

1  **III.   ARGUMENT**

2        Defendants asks this Court to compel arbitration in New York based on the

3  erroneous assumption that an international treaty governing foreign commercial

4  disputes applies to the Settlement Agreement.  That treaty does not apply, such that

5  Defendants cannot ask this Court to compel arbitration in New York.  Even

6  assuming this Court had jurisdiction to grant the relief Defendants seek, there is no

7  basis for compelling arbitration because the Parties expressly exempted disputes

8  over actual trademark use from the ambit of the Settlement Agreement.  Finally,

9  Defendants fail to establish that they are entitled to a stay on any basis.  Therefore,

10  the Motion should be denied in its entirety.

11        **A.    The Settlement Agreement Does Not Implicate The Convention,**

12              **Such That The Motion To Compel Arbitration In New York Must**

13              **Be Denied For Lack Of Jurisdiction.**

14        The Convention does not apply to a Settlement Agreement addressing the

15  description of services in a U.S. trademark application.  Because the Convention

16  does not apply, this Court lacks jurisdiction to grant the relief Defendants seek, and

17  the Motion should be denied in its entirety.

18              **1.    An International Treaty Addressing Arbitration Of Foreign**

19                    **Commercial Disputes Does Not Govern Here.**

20        Defendants contend that the Settlement Agreement is subject to the

21  Convention, which addresses the arbitration of disputes arising from foreign

22  commerce.  *See GE Energy Power Conversion France SAS, Corp. v. Outokumpu*

23  *Stainless USA, LLC*, 590 U.S. 432, 438 (2020) (the Convention "is a multilateral

24  treaty that addresses international arbitration" and "focuses almost entirely on

25  arbitral awards").  Defendants' argument depends on a gross misunderstanding of

26  the relevant law, however.  (Dkt. 14-1 at 9.)  The Convention does not apply here.

27        In their Motion, Defendants rely on *Chloe Z Fishing Co. v. Odyssey Re*

28  *(London) Ltd.*, 109 F. Supp. 2d 1236, 1241 (S.D. Cal. 2000), and *Balen v. Holland*

1    *Am. Line Inc.*, 583 F.3d 647, 654–55 (9th Cir. 2009), urging this Court to apply a

2    four-pronged test "[t]o determine whether an arbitration agreement covered by the

3    Convention exists[.]"  (Dkt. 14-1 at 9-10.)  Neither *Chloe* nor *Balen* applied this

4    four-pronged test to determine whether the Convention applied to the at-issue

5    agreement, however.   Rather, in both cases, the parties and Courts presumed that

6    the Convention applied because the at-issue agreements governed maritime

7    commercial transactions implicating foreign parties.  *See Chloe Z Fishing Co.*,

8    109 F.Supp.2d at 1241; *see Balen*, 583 F.3d at 651-52.  Thus, accepting that the

9    agreements fell within the province of the Convention, the Courts applied the four-

10   pronged test to determine whether to compel arbitration thereunder.  *See Balen*,

11   583 F.3d at 654 ("Courts generally address four factors to determine whether to

12   enforce an arbitration agreement *under the Convention*.") (italics added).

13           Defendants' authority addressed the second step of the analysis – *i.e.*, whether

14   to compel the parties to arbitrate pursuant to an arbitration agreement governed by

15   the Convention – but not the critical first step of the analysis – *i.e.*, whether the

16   Convention even applies to the arbitration agreement.  The Honorable André Birotte

17   Jr., of this Court parsed this distinction in *Padilla Ayala v. Teledyne Defense Elec.*,

18   533 F.Supp.3d 920, 925 (C.D. Cal. 2021), explaining that "the *Balen* test is used to

19   determine whether to enforce an arbitration agreement that has *already* been found

20   to fall under the [] Convention," such as in "obvious" cases involving "foreign

21   sailors" or "arbitration decisions made by foreign arbiters."  (Citations omitted;

22   italics in original.)  Conversely, "in a less obvious case such as this, where the sole

23   foreign connection is [a party's] citizenship, the Court must begin with the *Gould*

24   framework due to its close adherence to the text of section 202."  *Id*.

25           Defendants conspicuously overlook the threshold *Gould* analysis in their

26   Motion and, thus, make no showing that the Convention has any application to the

27   Settlement Agreement.  This misstep is critical, as the *Gould* test shows that the

28   Convention does not apply here.  Indeed, "[t]o fall under the [] Convention, 'the

award [or arbitration agreement] (1) must arise out of a legal relationship (2) which is commercial in nature and (3) which is not entirely domestic in scope.'" *Id*. (quoting *Ministry of Def. of Islamic Republic of Iran v. Gould Inc*., 887 F.2d 1357, 1362 (9th Cir. 1989)) (insertion in original).  In this case, as in *Padilla Ayala*, Defendants cannot establish that the Settlement Agreement is commercial in nature, nor can they show that its scope extends beyond the United States.

   ***Commercial In Nature.***  An agreement is "commercial in nature" when it "include[s] an interstate commerce connection to conform with Commerce Clause limitations." *Id*. at 926 (citations omitted).  Thus, the movant must show that the at-issue agreement "impacted interstate commerce[.]" *Id*.  In *Padilla Ayala*, for example, the Court determined that the defendant failed to establish the "commercial nature" of the employment arbitration agreement; although the defendant submitted a declaration describing the scope of the plaintiff's employment duties, it nonetheless failed to make "a showing that the employee's duties affected interstate commerce." *Id*. (citations omitted).  In this case, too, Defendants fail to furnish any evidence showing that the Settlement Agreement had any actual impact on the stream of interstate commerce, such as by showing that they changed the way in which they use their MELIO Mark in interstate commerce as a result of the terms of the Settlement Agreement.  (*See* Dkts. 14-1, 15, *generally*.)  Indeed, the Settlement Agreement disclaims any application to interstate commerce, providing: "This Agreement does not address any concerns, actual claims, or potential claims of loanDepot related to Payper's *actual use* of the MELIO Mark …."  (Oines Decl., ¶ 5, Ex. 4, § 3.3 [italics added].)  In fact, at the time the Parties entered the Settlement Agreement, the MELIO trademark application was based on an intent to use the Mark in commerce, per 15 U.S.C. § 1051(b), as opposed to any actual use of the Mark in commerce.  (*Id*., ¶ 3, Ex. 2.)  The Convention thus does not govern.

   ***Not Entirely Domestic In Scope.***  Fundamentally, the Convention is intended to apply to parties "engaged in foreign trade" who depend on arbitration as an

efficient mechanism to settle commercial disputes arising from "foreign commerce." *Padilla Ayala*, 533 F.Supp.3d at 927 (*citing, e.g., David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)*, 923 F.2d 245, 250 (2d Cir. 1991) ("The goal of the Convention is to promote the enforcement of arbitral agreements in contracts involving international commerce so as to facilitate international business transactions on the whole.")).  In furtherance of this purpose, for the Convention to apply, "more foreign ties are needed beyond just the citizenship of the parties."  *Id*. In *Padilla Ayala*, for example, the Court determined that the Honduran citizenship of one party to the arbitration agreement did not suffice to transform the dispute into "an instance of foreign arbitration under the Convention."  *Id*.; *see also Pineda v. Sun Valley Packing, L.P.*, No. 1:21-cv-01265-DAD-EPG, 2021 WL 5755586, at *4-*5 (E.D. Cal. Dec. 3, 2021) (following *Padilla Ayala* and finding the Convention inapplicable based on the party's Mexican citizenship alone: "The [] Convention does not apply to the parties' arbitration agreements at issue here, which are entirely domestic in scope and thus do not 'fall under the Convention.'").  Here too, Defendants merely argue that "an Israeli company, Melio is not an American citizen." (Dkt. 14-1 at 10.)  Citizenship, alone, does not suffice.  On its face, the Settlement Agreement merely governs the scope of a intent-to-use application filed with the U.S. Patent and Trademark Office, such that it has no discernible impact on foreign trade.  (Oines Decl., ¶ 5, Ex. 4, § 3.3; *see also id*., ¶ 3, Ex. 2.)

Therefore, the Convention does not apply because: (1) Defendants fail to show that the Settlement Agreement had any concrete impact on interstate commerce; and (2) the Settlement Agreement lacks any foreign ties beyond the citizenship of one party.  Defendants thus fail to establish than a Settlement Agreement reached for sake of allowing registration of a trademark in the United States implicates an international treaty governing foreign commercial disputes.

/ / /

/ / /

**2.      Because the Convention Does Not Apply, This Court Cannot
Compel Arbitration in New York.**

For the reasons stated above, the Convention does not apply, such that its
jurisdictional expansion for international arbitration agreements is likewise
inapplicable.  (*See* 9 U.S.C. § 206.)  Without application of the Convention, this
Court cannot compel arbitration in New York, as Defendants request.  *See*  9 U.S.C.
§ 4 (The court is authorized to "make an order directing the parties to proceed to
arbitration in accordance with the terms of the agreement.  The hearing and
proceedings, under such agreement, *shall be within the district* in which the petition
for an order directing such arbitration is filed.") (italics added).

In fact, in their initial meet and confer letter to loanDepot, Defendants
conceded that this Court cannot compel the Parties to arbitrate in New York.  At that
time, Defendants did not argue that the Convention applied, but invoked the default
provisions of the FAA.  Defendants acknowledged: "The Agreement provides that
'the locale where the arbitration shall be held will be in New York.'  In interpreting
Section 4 of the Federal Arbitration Act, which governs here, Ninth Circuit
precedent holds that a district court may compel arbitration to occur only in its
district."  (Oines Decl., ¶ 15, Ex. 13 at p. 3, *citing, e.g., Textile Unlimited, Inc. v. A.
BMH & Co.*, 240 F.3d 781 (9th Cir. 2001) (holding that the "plain language" of
Section 4 of the FAA "confines the arbitration to the district in which the petition to
compel is filed").)  Thus, per Defendants, "[w]here, as here, the parties agreed to
arbitrate their claims in another district (i.e., New York), the proper procedure is for
the party seeking to compel arbitration (i.e., Melio) to petition the district court
covering the arbitral tribunal (i.e., S.D.N.Y.) to compel arbitration[.]"  (*See id*.)
Given this concession, Defendants cannot dispute that the inapplicability of the
Convention dooms their Motion.

Plainly, Defendants have avoided petitioning to compel arbitration in New
York in a futile effort to circumvent unfavorable law.  In their initial letter to

loanDepot, Defendants exclusively invoked Second Circuit law to argue for
arbitrability.  (*See id.* at pp. 1-3.)  In response, loanDepot cited law undercutting
Defendants' position[1] (*see id.*, ¶ 16, Ex. 14), leading Defendants to abandon their
reliance on Second Circuit law altogether and attempt to use the Convention as a
tool for this Court to compel arbitration in a location that is otherwise outside of its
jurisdiction, per the FAA's default rule.  (*See* Dkt. 14-1.)  Put otherwise, Defendants
transparently invoke an international treaty governing foreign commercial
transactions for sake of bringing their Motion in the Ninth Circuit, despite earlier
stating that this Court lacks jurisdiction to grant the relief sought.

At bottom, however, upon finding that the Convention does not apply, the
Court can no longer grant Defendants' requested relief, such that the entire Motion
should be denied without any consideration of any other argument raised therein.

**B.**     **Assuming Jurisdiction Exists To Consider Arbitrability, The**
         **Carveout In The Settlement Agreement Exempts The Lawsuit**
         **From Its Province, Such That No Issue Should Be Arbitrated.**

Even assuming *ad arguendo* this Court has jurisdiction to entertain
Defendants' requested relief for an order compelling arbitration in New York,
Defendants still cannot establish: (1) that the arbitration provision set forth in the
Settlement Agreement governs the instant dispute over actual trademark use,
whether under the *Balen* test or otherwise; and (2) that the issue of arbitrability must
be delegated to an arbitrator.   Therefore, Defendants' Motion fails.

/ / /

/ / /

---

[1]    Given the carveout included in the Settlement Agreement, the Second Circuit
would undoubtedly reject Defendants' argument. *See, e.g., Woodcrest Nursing
Home v. Local 144, Hotel Allied Serv. Union*, 788 F.2d 894, 898 (2d Cir. 1986)
(affirming district court's refusal to compel arbitration; despite broad language of
the arbitration clause, carveout elsewhere in the agreement excluded its application
to the dispute); *see also Int'l Union of Operating Eng'r, Local 17, AFL-CIO v.
Union Concrete & Constr. Corp.*, 147 F.Supp.3d 202 (W.D.N.Y. 2015) (same);
*Katz v. Feinberg*, 167 F.Supp.2d 556 (S.D.N.Y. 2001) (same), aff'd 290 F.3d 95 (2d
Cir. 2002); etc.

1.    **The Court Cannot Compel The Parties To Arbitrate A Dispute That Has Been Specifically Excluded From The Province Of The Settlement Agreement.**

If this Court reaches the issue of arbitrability, either by finding the Convention applicable or otherwise, the claims raised in this lawsuit nonetheless fall outside the scope of the Settlement Agreement, precluding their arbitration.

    a.    <u>Even If The Court Reaches The Four-Pronged *Balen* Test, Which It Need Not Do, There Is No Basis To Compel Arbitration Under The Convention.</u>

Although recently referenced as the "*Balen* test" (*see* Section III(A)(1), *supra*), the four-factor test used to assess whether to compel arbitration under an agreement governed by the Convention has been applied long before the Ninth Circuit issued its *Balen* decision. This test entails analysis of the following factors derived from the plain language of the Convention: (1) "Is there an agreement in writing to arbitrate the subject of the dispute?"; (2) "Does the agreement provide for arbitration in the territory of the signatory of the Convention?"; (3) "Does the agreement arise out of a legal relationship whether contractual or not, which is considered as commercial?"; and (4) "Is a party to the agreement not an American citizen, or does the commercial relationship have some reasonable relation with one or more foreign states?" *Chloe Z Fishing Co.,* 109 F.Supp.2d at 1243 (quoting *Ledee v. Ceramiche Ragno*, 684 F.2d 184, 186-87 (1st Cir. 1982)); *see also* Convention, Article II(1), 21 U.S.T. 2517, T.I.A.S. No. 6997 (requiring "[e]ach Contracting State [to] recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration").

In this case, the first factor forecloses Defendants' argument because the arbitration clause in the Settlement Agreement does not apply to the subject matter

of the lawsuit. *See, e.g., Vedachalam v. Tata Am. Intern. Corp.*, 477 F.Supp.2d 1080, 1082 (N.D. Cal. 2007) (denying motion to compel arbitration under the Convention based solely on failure to show that the arbitration agreements covered the subject matter of the dispute: "the terms of the agreement relate to a training period and a related right to exclusive employment and surety given in exchange for training," while the "claims arise from [] deputation in the United States, not the training period or the training program"), aff'd 339 F. App'x 761 (9th Cir. 2009); *see also In re TFT–LCD (Flat Panel) Antitrust Litig.*, No. 07–1827, 2013 WL 3784938, at \*3 (N.D. Cal. July 18, 2013) (only considering the first factor of the *Balen* test in refusing to compel arbitration under the Convention: "By contract, the arbitration provision here is too narrow to encompass [the] antitrust claims[.]").

In its analysis of the first factor, "the Court must determine whether the scope of the arbitral clauses—as evidenced by their specific language—includes the subject of the parties' present dispute—as evidenced by the causes of action in plaintiffs' complaint—within the meaning of the Convention." *Chloe Z Fishing Co.,* 109 F.Supp.2d at 1252; *id.* at 1256 (court must examine "plaintiffs' five causes of action to determine whether each falls under this [arbitration] language") (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (courts must decide each claim's arbitrability within the scope of the arbitral language before referring the claim to arbitration)). "The 'first task' of a court assessing the scope of an arbitration clause is 'to determine whether the parties agreed to arbitrate *that* dispute.'" *SanDisk Corp. v. SK Hynix Inc.*, 84 F.Supp.3d 1021, 1031 (N.D. Cal. Mar. 26, 2015) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)) (italics in original). "[A] court should 'not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated.'" *Id*. at 1030 (quoting *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002)).

Here, the first factor precludes compulsion of arbitration under the

1    Convention.  The Settlement Agreement expressly provides that it does not apply to

2    any claims arising from actual use of the Parties' marks, but only the trademark

3    application filed before the U.S. Patent and Trademark Office, providing: "This

4    Agreement is intended to address ***only*** the application for the MELIO Mark and the

5    services identified in the application.  This Agreement ***does not*** address any

6    concerns, actual claims, or potential claims of loanDepot related to Payper's ***actual***

7    ***use*** of the MELIO Mark now or in the future[.]"  (Oines Decl., ¶ 5, Ex. 4, § 3.3

8    [emphasis added].)  Put otherwise, the Settlement Agreement expressly excludes

9    from its province any claims concerning the "actual use" of the MELIO Mark.

10   Conversely, loanDepot's Complaint *solely* implicates that Parties' actual uses of

11   their respective marks in commerce and does not address the MELIO application,

12   which later registered, such as by requesting cancellation.  (*See* Dkt. 1, ¶¶ 29-34.)

13   Therefore, the Settlement Agreement expressly excludes from its ambit the claims

14   raised in this lawsuit, such that its arbitration provision cannot apply.

15        The case *SanDisk Corp. v. SK Hynix Inc*., 84 F.Supp.3d 1021, is directly on-

16   point.  There, the Northern District denied a motion to compel arbitration under the

17   Convention because the defendant failed to establish the first factor.  The parties

18   entered into a patent license agreement ("PCLA"), which contained an arbitration

19   clause, and the plaintiff thereafter brought suit for misappropriation of trade secrets

20   that implicated the licensed patents.  *Id*. at 1024-26.  Importantly, the PCLA

21   contained a "separate provision" that excluded the licensure of particular rights

22   implicated in the lawsuit.  *Id*. at 1031.  Thus, despite the defendant's argument that

23   the "alleged [] trade secrets that [plaintiff] claims were misappropriated are actually

24   covered by the patents it licensed under the PCLA," the Court found that the

25   arbitration clause did not apply: "[T]he Patent Cross License Agreement expressly

26   excludes from its scope any rights to, *inter alia*, [Redacted] PCLA § 6.2(g).  Where,

27   as here, an arbitration clause in a license agreement is at issue, ***the arbitration***

28   ***clause does not implicate disputes over matters that are expressly excluded from***

**the license**.” *Id*. at 1034 (*citing, e.g., Radware, Ltd. v. F5 Networks, Inc*., No. C-13-02024-RMW, 2013 WL 6773799, at *2 (N.D. Cal. Dec. 23, 2013) (parties did not agree to arbitrate dispute over matter excluded from the terms of a patent license agreement containing the arbitration clause)) (emphasis added).   Finding otherwise “would be ‘inconsistent with the plain text of the contract’ and would result in the Court ‘overrid[ing] the clear intent of the parties,’ a course against which both the U.S. Supreme Court and the Ninth Circuit have cautioned.” *Id*. (citations omitted).

      In this case, too, the Settlement Agreement expressly excludes claims arising from actual use of the MELIO Mark, such that requiring arbitration would “reach a result inconsistent with the plain text” of the Settlement Agreement and “the clear intent of the parties.” *See id*. at 1032.  Defendants thus fail to show that the four *Balen* factors warrant an order compelling arbitration under the Convention.

      Case law assessing the arbitrability of disputes under the default provisions of the FAA compels this same conclusion. *See, e.g., Doe v. Heidrick & Struggles, Inc.*, No. 2:24-cv-01113-SPG-PVC, 2024 WL 3051065, at *7 (C.D. Cal. May 31, 2024) (“Where an ‘express provision exclud[es] a particular grievance from arbitration,’ that provision controls.”) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co*., 363 U.S. 574, 582 (1960)); *Alvarado v. Rockwell Collins, Inc*., Case No. CV 23-400-JFW(JCx), 2023 WL 5505877 (C.D. Cal. May 24, 2023) (denying motion to compel arbitration because the agreement excluded equitable claims for unfair competition; “the Court cannot compel a claim to arbitration that Plaintiff did not agree to arbitrate”).  Fundamentally, “[t]he first principle of a court’s arbitration decision is that arbitration is strictly a matter of consent and thus is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration.” *Granite Rock Co. v. Int’l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010); *see also Morgan v. Sundance*, 596 U.S. 411, 418 (2022) (“The federal policy is about treating arbitration contracts like all others, not about fostering arbitration.”); *Stolt-Nielsen S.A. v. Animalfeeds Int’l Corp.*, 559 U.S. 662, 683 (2010) (parties are

1    "free to structure their arbitration agreements as they see fit," and may "agree to

2    limit the issues they choose to arbitrate").

3         loanDepot entered the Settlement Agreement based on its express

4    inapplicability to disputes concerning actual trademark use, such as raised in this

5    lawsuit.  Given the plain language of this carveout, Defendants cannot establish that

6    this Court should compel arbitration.

7              b.    <u>The Motion Largely Ignores The Carveout In Section 3.3,</u>

8                    <u>Which Excludes This Lawsuit From Any Obligation To</u>

9                    <u>Arbitrate, And Cites No Law Considering Such Carveouts.</u>

10        As shown in the aforementioned case law, including *SanDisk Corp. v. SK*

11   *Hynix Inc.*, *Doe v. Heidrick & Struggles, Inc.*, and *Alvarado v. Rockwell Collins,*

12   *Inc.*, Courts analyzing the scope of an arbitration agreement begin by considering

13   any carveout contained therein and, if the plaintiff's claims fall within the ambit of

14   that carveout, find arbitration foreclosed.  Defendants, however, invert the analysis

15   and treat the carveout as a second thought.  Indeed, Defendants begin their argument

16   with the premise that the Settlement Agreement implicates a "broad arbitration

17   clause" (Dkt. 14-1 at 13); next, they attempt to contort into a concession of

18   arbitrability that fact that loanDepot referenced the Settlement Agreement when

19   addressing Defendants' since-abandoned trademark applications (*id*. at 13-15);

20   thereafter, they cite irrelevant case law in which the Court compelled arbitration

21   based on broad arbitration clauses, without any attendant contractual carveout (*id*. at

22   16); and, as an afterthought, they attempt to downplay the significance of the

23   carveout.  (*Id*. at 16-18.)  Defendants' attempted contortion of the plain meaning of

24   the Settlement Agreement lacks any merit, however.

25        ***First***, Defendants contend that "loanDepot provided notice of its claims under

26   Section 3.2 of the Trademark Agreement," which concedes that the Agreement

27   applies here.  (Dkt. 14-1 at 13.)  Not so.  At the time loanDepot sent its pre-lawsuit

28   correspondence to Defendants, Defendants had filed new trademark applications to

1  register a stylized version of the MELIO Mark, which they had been using in

2  connection with advertising related to real estate.  (Oines Decl., ¶¶ 8, 9. Ex. 7;

3  Complaint, ¶ 1.)  These new applications thus seemed to implicate certain

4  restrictions set forth in the Settlement Agreement.  (*See* Oines Decl., ¶ 9, Ex. 8.)

5  Before the initiation of this lawsuit, Defendants abandoned those applications, such

6  that they are not at-issue here.  (*See id.* ¶¶ 12, 13, Exs. 11, 12.)  The fact that

7  loanDepot discussed in one letter both the Settlement Agreement and concerns

8  regarding Defendants' actual use of the MELIO Mark does not entail that the

9  Settlement Agreement applies here.

10      ***Second***, Defendants argue that the Settlement Agreement applies here

11  because one of its terms provides in part: "[Melio] agrees to refrain from all use of

12  the MELIO Mark in the field of real estate financing transactions."  (Dkt. 14-1 at

13  14.)  That restriction, however, follows from the preceding provision, which

14  required that Melio amend the list of services included in the application to exclude

15  real estate transactions.  (Oines Decl., ¶ 5, Ex. 4, § 2.1.)  Thus, the referenced term is

16  merely indicative of the fact that the trademark register reflects the marketplace.

17  *See In re Bay State Brewing Co., Inc.*, 117 U.S.P.Q.2d 1958, 1965 (T.T.A.B. 2016)

18  ("The trademark register should reflect, within the constraints of the Trademark Act,

19  the realities of the marketplace.").  Put otherwise, a restriction in the services listed

20  in the application entails a corresponding restriction in use.  The referenced

21  restriction thus follows from the narrowing of services listed in the application and

22  does not suffice to negate the express carveout for "actual use" claims.

23      ***Third***, Defendants rely on the recitals in the Settlement Agreement to draw a

24  tenuous connection between the Agreement and the Complaint.  Specifically,

25  Defendants rely on two recitals: (1) a recital that mentions loanDepot's trademark

26  registrations; and (2) a recital that noted: "loanDepot asserts that the MELIO Mark

27  is similar in appearance[.]" (*See* Dkt. 14-1 at 14-15; *see also* Oines Decl., ¶ 5,

28  Ex. 4.)  Those recitals, however, merely reference the circumstances attendant to

1   entry into the Settlement Agreement, including the allegations set forth in

2   loanDepot's Notice of Opposition to Melio's intent-to-use trademark application.

3   (Oines Decl., ¶ 4, Ex. 3 at ¶ 7 ["Applicant's Mark is phonetically and visually

4   similar to Opposer's Mark[.]"].)  Indeed, recitals are "[a] preliminary statement in a

5   contract or deed explaining the reasons for entering into it or the background of the

6   transaction," *see* Black's Law Dictionary (12th ed. 2024), such that Defendants fail

7   to show that their inclusion can nullify a substantive carveout.

8        ***Fourth***, Defendants contend that the reference to the Settlement Agreement in

9   the Complaint entails that it applies.  (Dkt. 14-1 at 15.)  Not so.  loanDepot

10  mentioned the earlier trademark dispute and resulting Settlement Agreement by way

11  of general background.  (Dkt. 21 at 28.)  The Settlement Agreement has no

12  relevance to any of the four causes of action, all of which arise from actual use of

13  the MELIO Mark, and Defendants fail to show otherwise.  (*See id*., ¶¶ 36-27.)

14       In sum, none of these explanations warrant a nullification of the bargained-for

15  carveout set forth in Section 3.3, which allows loanDepot to prosecute claims arising

16  from actual trademark use in a Court of law.

17              **2.      The Parties Did Not Clearly And Unmistakably Delegate**

18                      **Arbitrability To An Arbitrator Because They Exempted**

19                      **Disputes Over Actual Use From The Overall Agreement.**

20       Confusingly, after urging the Court to conduct the *Balen* test and find the

21  issues raised in the lawsuit within the scope of the arbitration provision, Defendants

22  argue: "To the extent loanDepot contends that any of its claims are outside the scope

23  of the Arbitration Agreement, that challenge must be raised in the arbitration[.]"

24  (Dkt. 14-1 at 11.)  Put otherwise, Defendants seem to invite the Court to rule on the

25  issue of arbitrability – provided it does so in their favor.  Nonetheless, the Court

26  must reject Defendants' request that it delegate the issue of arbitrability to an

27  arbitrator because the Settlement Agreement does not govern the lawsuit.

28       "Unless the parties clearly and unmistakably provide otherwise, the question

1   of whether the parties agreed to arbitrate is to be decided by the court, not the
2   arbitrator." *AT&T v. Commc'ns Workers*, 475 U.S. at 649; *see also First Options of*
3   *Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995) (noting that "one can understand
4   why courts might hesitate to interpret silence or ambiguity on the 'who should
5   decide arbitrability' point as giving the arbitrators that power, for doing so might too
6   often force unwilling parties to arbitrate a matter they reasonably would have
7   thought a judge, not an arbitrator, would decide").

8       Defendants argue that the Court should delegate the determination of
9   arbitrability to an arbitrator because the Settlement Agreement references the AAA
10  Commercial Rules, relying on *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir.
11  2015).  (*See* Dkt. 14-1 at 11.)  In *Brennan*, the plaintiff sued his employer for breach
12  of his employment agreement, which agreement provided: "[A]ny controversy or
13  claim arising out of this [Employment] Agreement or [Brennan's] employment with
14  the Bank or the termination thereof … shall be settled by binding arbitration in
15  accordance with the Rules of the American Arbitration Association."  *Brennan*,
16  796 F.3d at 1127-28.  In that context, the reference to AAA constituted "'clear and
17  unmistakable' evidence of the parties' intent" to delegate the issue of arbitrability.
18  The Ninth Circuit, however, expressly noted that the "limit[ation] [of its] holding to
19  the facts of the present case," which involved a broad arbitration clause and
20  sophisticated parties.  *Id*. at 1131.  Thus, *Brennan* does not set forth an across-the-
21  broad rule that reference to the AAA Commercial Rules, alone, suffices to establish
22  delegation of arbitrability to an arbitrator, as Defendants suggest.  *See, e.g., Nessim*
23  *v. Fliff, Inc.*, No. 5:23-cv-01048-SSS-SHKx, 2024 WL 1600649, at *5 (C.D. Cal.
24  Jan. 5, 2024) ("[T]he Court recognizes the reach of *Brennan* is an undecided matter
25  in the Ninth Circuit about which numerous qualified jurists disagree.").

26      In this case, the carveout set forth in Section 3.3 of the Settlement Agreement
27  entails that the reasoning of *Brennan* does not apply.  Section 3.3 specifically
28  exempts from the province of the Settlement Agreement any claims arising from the

actual use of the MELIO Mark. (Oines Decl., ¶ 5, Ex. 4, § 3.3.)  Thus, this case is more analogous to *Mohamed v. Uber Techs., Inc*., 848 F.3d 1201 (9th Cir. 2016), which issued after *Brennan*.  There, the plaintiffs brought claims under various California statutes, including California's Private Attorneys General Act of 2004 (PAGA); the applicable agreements included arbitration clauses that delegated the issue of arbitrability to an arbitrator, while concurrently including a carveout for any PAGA claim.  *Id*. at 1207-08.  Given this carveout, the Ninth Circuit held: "Under the terms of the agreement [plaintiff] signed, the PAGA waiver should be severed from the arbitration agreement and [plaintiff's] PAGA claims may proceed in court on a representative basis."  *Id*. at 1206; *see id*. at 1209 (further explaining: "we are required to enforce these agreements 'according to their terms'").  Here too, the carveout in Section 3.3 takes the dispute outside the scope of the Settlement Agreement altogether.  *See, e.g., Han v. Synergy Homecare Franchising, LLC*, No. 16-CV-03759-KAW, 2017 WL 446881, at *5-*6 (C.D. Cal. Feb. 2, 2017) (despite reference to AAA commercial rules, the parties did not clearly and unmistakably delegate arbitrability with respect to claims excluded by the carve-out provision).

Even the decision on which Defendants rely, *Brennan*, 796 F.3d at 1131, made clear that it depended on the reasoning of other Circuits, including the Second and the Fifth, in reaching its conclusion.  Following *Brennan*, the Fifth Circuit has held that reference to the AAA Commercial Rules does not unmistakably indicate an intent to delegate arbitrability to an arbitrator when the agreement contains a carveout omitting certain claims from its province.  *See Archer and White Sales, Inc. v. Henry Schein, Inc*., 935 F.3d 274, 281-82 (5th Cir. 2019).  Similarly, in the Second Circuit, when "there is a qualifying provision (whether described as a carve-out or carve-in) that arguably excludes the present dispute from the scope of the arbitration agreement, that provision creates ambiguity regarding the parties' intent to delegate arbitrability to the arbitrator," *DDK Hotels, LLC v. Williams-Sonoma,*

*Inc.*, 6 F.4th 308, 332 (2d. Cir. 2021), and this ambiguity then "delays application of AAA rules until a decision is made as to whether a question does or does not fall within the intended scope of arbitration, in short, until arbitrability is decided." *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1032 (2d Cir 2014) (finding no delegation "where a broad arbitration clause [was] subject to a qualifying provision that at least arguably cover[ed] the present dispute").

Furthermore, the Motion seems to take for granted the fact that Ninth Circuit law governs the delegation issue, without so establishing.  The arbitration provision in the Settlement Agreement invokes New York law and sets New York as the location of arbitration, meaning New York law arguably applies here.  (*See* Oines Decl., ¶ 5, Ex. 4, § 4.7.)  Indeed, Defendants initially applied Second Circuit authority to this dispute (Oines Decl., ¶ 15, Ex. 13), per the default jurisdictional restrictions of the FAA and the plain language of the arbitration provision.  "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally … should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc.*, 514 U.S. at 944; *see, e.g., Goceri v. Amazon.com, Inc.*, --- F.Supp.3d ----, 2024 WL 1007868, at *3 (N.D. Cal. 2024) (applying Washington State law to issue of delegation).

When applying New York State law, the Courts in the Second Circuit follow the analysis set forth in *DDK Hotels, LLC* and refuse to delegate arbitrability to an arbitrator when a carveout renders the delegation uncertain.  *See Staley v. Hotel 57 Services, LLC*, 23-770 (L), 23-771 (CON), 2024 WL 1090816, at *2-*3 (2d Cir. Mar. 13, 2024) (clarifying that *DDK Hotels, LLC* standard applies under New York State law; despite incorporation of AAA Commercial Rules, the agreement "carves out" certain disputes, such that arbitrability not delegated to the arbitrator).  In this case, as stated above, the Settlement Agreement includes exclusionary language, which makes clear that the issues raised in this litigation are outside the province of the Settlement Agreement altogether.  (*See* Section III(B)(1), *supra*.)  Given this

exclusionary language, there is no "clear and unmistakable" evidence rebutting the presumption that the Court decides the issue of arbitrability, regardless of whether this Court applies the law of the Ninth Circuit or New York State.

**C.** **Defendants Fail To Carry Their Heavy Burden To Establish Their Entitlement To A Stay Of This Lawsuit.**

Finally, Defendants ask that the Court stay this lawsuit pending arbitration. (Dkt. 14-1 at 19.)  For the reasons set forth above, however, there is no basis to compel arbitration.  Accordingly, Defendants are not entitled to a stay – on the basis articulated in the Motion or any other.  A party seeking a stay of discovery carries a "heavy burden to make a strong showing" that a stay is warranted.  *Cain v. Jpay, Inc.*, No. 2:21-cv-07401-FLA-(AGRx), 2022 WL 1840342, at *2 (C.D. Cal. Apr. 4, 2022) (citation omitted) (denying motion to stay pending motion to compel arbitration).  The mere "possibility that parallel proceedings covering related disputes could produce inconsistent results does not necessitate granting a stay." *Chen v. Bank of Am., N.A.*, CV 19-6941-MWF-(SK), 2020 WL 4561658, at *3 (C.D. Cal. Mar. 31, 2020) (denying stay of non-arbitrable claims; "given that the parties will need to litigate the non-arbitrable claims irrespective of the arbitration outcome, proceeding with this litigation would not qualify as a waste of judicial resources").  Defendants proffer no rationale for staying this entire lawsuit, such that this threadbare request should be rejected.

**IV.** **CONCLUSION**

For the foregoing reasons, Defendants' Motion should be denied its entirety.

Dated: September 9, 2024

RUTAN & TUCKER, LLP
RONALD P. OINES
SARAH VAN BUITEN

By: _____
Ronald P. Oines
Attorneys for Plaintiff
LOANDEPOT.COM, LLC

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff loanDepot.com, LLC, certifies that this brief contains 6,999 words, which:

_X_ complies with the word limit of L.R. 11-6.1.

__ complies with the word limit set by court order dated _____ [date].

Counsel relies on the word count of the word-processing application used to prepare the brief.

Dated: September 9, 2024

RUTAN & TUCKER, LLP
RONALD P. OINES
SARAH VAN BUITEN

By: _____
  Ronald P. Oines
  Attorneys for Plaintiff
  LOANDEPOT.COM, LLC

## DECLARATION OF RONALD P. OINES

I, Ronald P. Oines, declare as follows:

1.　　I am an attorney at the law firm of Rutan & Tucker, LLP, counsel of record for Plaintiff loanDepot.com, LLC ("loanDepot") in this action.　I am a member in good standing of the State Bar of California and have been admitted to practice before this Court.　I make this Declaration in support of Opposition to Motion to Compel Arbitration and Stay the Action.　I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.　　On August 5, 2018, Defendant Melio Ltd. (formerly Payper Smart Payments Ltd.; "Melio") filed its application to register the trademark "MELIO" as a standard character mark.　A true and correct copy of this application, which I retrieved from the records of the United States Patent and Trademark Office is attached hereto as **Exhibit 1**.　As shown therein, Melio filed an intent-to-use trademark application.

3.　　On March 26, 2019, Melio's trademark application published in the Trademark Official Gazette, still on an intent-to-use-basis.　A true and correct copy of this publication, which I retrieved from the records of the United States Patent and Trademark Office is attached hereto as **Exhibit 2**.

4.　　On September 23, 2019, loanDepot filed a Notice of Opposition to registration of the MELIO Mark, a true and correct copy of which is attached hereto as **Exhibit 3**.

5.　　On September 26, 2019, loanDepot and Melio entered into a Settlement Agreement intended to address their dispute over the scope of services included in the trademark application.　A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit 4**.

6.　　On October 2, 2019, Melio moved to amend its trademark application to limit the scope of services and correspondingly dismiss the Notice of Opposition,

1  a true and correct copy of which is attached hereto as **Exhibit 5**.

2        7.    On October 27, 2020, the MELIO Mark registered, and a true and

3  correct copy of the registration certificate is attached hereto as **Exhibit 6**.

4        8.    On April 16 and 18, 2023, Melio filed two applications to register

5  stylized versions of the MELIO Mark. One such application showed the MELIO

6  Mark in purple, and the other in black. A true and correct copy of the applications is

7  attached hereto as **Exhibit 7**.

8        9.    loanDepot became concerned that the stylization of the MELIO Mark

9  was confusingly similar to the stylization of loanDepot's MELLO Mark. Upon

10  investigation, loanDepot learned that Defendants used the stylized MELIO Mark to

11  advertise financial services within the real estate industry. On March 27, 2024,

12  loanDepot sent a letter to Melio noting these concerns, a true and correct copy of

13  which is attached hereto as **Exhibit 8**.

14       10.    On April 12, 2024, Melio responded to loanDepot by disputing the

15  likelihood of confusion. A true and correct copy of this letter is attached hereto as

16  **Exhibit 9**.

17       11.    On May 12, 2024, loanDepot sent a further letter, which expressed its

18  understanding of the Parties' earlier Settlement Agreement. A true and correct copy

19  of this letter is attached hereto as **Exhibit 10**.

20       12.    On June 5, 2024, Melio abandoned its new applications for the stylized

21  MELIO Mark. A true and correct copy of the requests for express abandonment are

22  attached hereto as **Exhibit 11**.

23       13.    On June 20, 2024, Melio sent a letter to loanDepot confirming the

24  abandonment of its applications, a true and correct copy of which is attached hereto

25  as **Exhibit 12**.

26       14.    Still concerned by Defendants' actual use of the MELIO Mark,

27  loanDepot initiated this lawsuit on June 27, 2024, to address that actual use.

28       15.    On August 6, 2024, Defendants' counsel sent a meet-and-confer letter

1  addressing their impending motion to stay the case while they petition to compel

2  arbitration in New York.  A true and correct copy of the letter is attached hereto as

3  **Exhibit 13**.

4       16.    On August 8, 2024, loanDepot responded by stating that it intended to

5  oppose the motion.  A true and correct copy of this letter is attached hereto as

6  **Exhibit 14**.

7       17.    On August 12, 2024, the Parties held a telephonic conference regarding

8  Defendants' intent to file: (1) a petition to compel arbitration in New York, and (2) a

9  motion to stay this action.

10      Executed on September 9, 2024, at Irvine, California.

11      I declare under penalty of perjury under the laws of the United States of

12  America that the foregoing is true and correct.

13

14                                                    _____

15                                                    Ronald P. Oines

16

17

18

19

20

21

22

23

24

25

26

27

28